UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

GLENN D. ODOM, II,                       )
                                         )
      Plaintiff,                         )          Civil Action No. 12-80-HRW
                                         )
V.                                       )
                                         )          **MEMORANDUM OPINION**
GERALD HELTON, ET AL,                    )              **AND ORDER**
                                         )
      Defendants.                        )

\*\*\*     \*\*\*     \*\*\*     \*\*\*

The Court has reviewed and considered the following motions;

(1)    the "Motion for Summary Judgment" filed by Defendants Gerald Helton, Kevin Dennis, Richard Fleming, Christopher Banks, and Lieutenant L. Wright [D. E. No. 17; supplemented at D. E. No. 48] ;

(2)    the "Motion to Compel (the production of a prison video recording)" filed by *pro se* plaintiff Glenn D. Odom, II [D. E. No. 25];

(3)    the "Motion to Dismiss" filed by Defendant Kevin Williams [D. E. No. 25];

(4)    the "Motion to Dismiss" filed Defendant Bonnie Elam [D. E. No. 36];

(5)    the "Motion for Order (to obtain the plaintiff's medical records)" filed by Defendant Bonnie Elam [D. E. No. 42]; and

(6)     the "Motion to Amend/Correct the Complaint" filed by Plaintiff Glenn D. Odom, II [D. E. No. 45].

Additionally, the Court has reviewed and considered the various respective responses, replies, objections, notices and/or *pro se* "letters" filed in relation to each of the above-listed motions. *See* D. E. Nos. 24, 26, 27, 29, 32, 33, 35, 37, 38, 39, 40, 43, 44, 46, 47, and 49]. For the reasons set forth below, all of the defendants' motions to dismiss/motion for summary judgment will be granted; Odom's motion to compel the production of a prison video recording will be denied as moot; Defendant Bonnie Elam's motion for an order releasing Odom's medical records will be denied as moot; and Odom's motion to amend or correct the complaint will be denied; and this action will be dismissed without prejudice for Odom's failure to properly exhaust his claims through the applicable administrative procedures.

## BACKGROUND

In August 2012, Odom filed the complaint in this 42 U.S.C. § 1983 civil rights action. Odom alleged that on December 8, 2011, officials at the Eastern Kentucky Correctional Complex ("EKCC") in West Liberty, Kentucky, where he was confined at that time, applied excessive force to him and denied him proper medical treatment.

In his complaint, Odom admitted that on December 8, 2011, he smeared himself with his feces, and that in response to his action, Sergeant Christopher Banks

2

came to his cell door, sprayed a strong blast of "OC" (oleoresin capsicum, the active ingredient in pepper spray) through his cell door slot, entered his cell, and sprayed his buttock and lower back area with an even stronger blast of "OC," causing him to suffer burns and severe pain. Odom alleged that as Correctional Officer Gerald Helton attempted to extract him from his cell, Helton used excessive force on him by slamming him into the steel bunk bed with such force that one of his (Odom's) teeth broke, forcefully hand-cuffing and shackling him, and hitting him in the face with his metal shield. Odom alleged that Helton and Correctional Officer Dennis shoved him into a door so hard that he developed a knot on his head, and that they ordered him to "smash" his head on the shower button to start the water running.

Odom claimed that while Helton and Dennis held him under the water in the shower, he heard one officer tell another officer "to block the camera" and say "'let's teach n***** not to play with s**t.'" [D. E. No. 1, p. 5] Odom stated that although he did not resist Helton and Dennis, Helton told him to "stop resisting" and continued to hit him on the head with his metal shield. [*Id.*] Odom asserted that Lieutenant Wright allegedly stood by "smirking/laughing at plaintiff," watched Helton and Dennis apply excessive force to him, and ignored his pleas to intervene and stop the alleged assault. Odom further alleged that while he was lying on the shower floor, Helton used the sharp edge of his metal shield to repeatedly "saw" into his penis and

3

testicles, causing both organs to bleed and causing him to experience pain and suffering. [*Id.*, pp. 5-6] Odom claimed that although the episode was recorded on the surveillance system, Banks watched Helton injure his genitals with his shield but did not intercede. [*Id.*, p. 6] Odom claimed that the actions of Banks, Dennis, Fleming, Helton, and Wright, amounted to unnecessary and excessive force in violation of his Eighth Amendment right to remain free from cruel and unusual punishment, and that these defendants are liable to him under several related common law tort theories.

Odom further alleged that EKCC Nurse Bonnie Elam observed the defendants applying excessive force to him in the shower but did nothing to stop the allegedly unconstitutional activity. [*Id.*, p. 7] Odom alleged that when he asked Elam to document, examine, and treat his injuries, she refused to do so, responding "'Well, that's what happens when you play with s**t!'" [*Id.*] Odom claimed that Elam violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs, and that she is liable to him under various common law tort theories.

Odom demanded substantial compensatory damages and punitive damages from all of the defendants. He also requested a preliminary and permanent injunction prohibiting EKCC officials from using excessive force on inmates, and directing them to document injuries to inmates and provide inmates with proper medical treatment.

On December 13, 2012, the Court entered a Memorandum Opinion and Order

4

in which it dismissed Odom's claims against all of the defendants in their official capacities, denied Odom's request for a preliminary and permanent injunction, and directed the EKCC correctional officers (Helton, Dennis, Williams, Fleming, Banks, and Wright) and Nurse Bonnie Elam to respond to Odom's Eighth Amendment individual capacity claims, and to his pendent state-law claims.  [D. E. No. 10]

### Motion for Summary Judgment filed by Defendants Gerald Helton, Kevin Dennis, Richard Fleming, Christopher Banks, and Lieutenant "L." Wright [D. E. No. 17, supplemented at D. E. No. 48]

Defendants Helton, Dennis, Fleming, Banks, and Wright have, by counsel, filed a motion for summary judgment [D. E. No. 17] in which they do not address the merits of Odom's underlying Eighth Amendment claims,[1] but instead argue that Odom's claims against them should be dismissed because he failed to exhaust his administrative remedies in accordance with the Kentucky Department of Corrections ("KDOC") procedure known as Corrections Policy and Procedure ("CPP") 14.6.

The five defendants explain that under CPP 14.6, a prisoner begins the grievance process by submitting a written grievance within five (5) days of an incident, which is followed by an attempt to resolve the grievance through informal

---

[1]

      In their motion, the five defendants briefly recount the events of December 8, 2011, to wit; their efforts to gain access to Odom's cell, enter the cell, restrain Odom and safely remove him from his cell, transport Odom to the showers, ensure that Odom remained in the shower until he was fully decontaminated, escort Odom back to his cell, and keep Odom safely restrained while he received a medical check.  [D. E. No. 17-1, pp. 2-3]

means. If the prisoner is dissatisfied with the outcome of the informal resolution he may submit a written request to the Grievance Coordinator asking that the Grievance Committee hold a hearing concerning his grievance. If the Grievance Committee conducts the hearing and issues an adverse recommendation, the prisoner may appeal to the warden. If the prisoner is dissatisfied with the warden's decision, he may then appeal to the Commissioner of the KDOC. It is at this point that the administrative review process is exhausted. *See* CPP 14.6 [D. E. No. 17-4, pp. 2-19]

In support of their argument, the defendants submitted the affidavits of EKCC Grievance Coordinator Sarah Potter. [D. E. No. 17-9; D. E. No. 48-1] Potter stated that on or about December 20, 2011, she received two grievances from Odom concerning the alleged events of December 8, 2011. [D. E. No. 17-5, p. 1, ¶ 3] In one of his grievances, Odom alleged that on December 8, 2011, Sergeant Banks, Correctional Officer Hall, and Correctional Officer Helton used excessive force to extract him from his cell. *See* Potter affidavit [D. E. No. 17-5, p. 1, ¶ 3, referring to Odom grievance, at D. E. No. 17-5] In his second grievance of the same date, Odom alleged that on December 8, 2011, EKCC Nurse Bonnie Elam refused to clean the cuts on his wrists and document his injuries. [D. E. Nos. 17-9 and 48-1, referring to Odom grievance at D. E. No. 48-2, p. 1].

In her affidavit, Potter states that on December 22, 2011, she returned both of

6

his grievances to Odom with a memorandum informing him that because he was under a grievance restriction which permitted him to file only one (1) grievance every ten days, he would have to choose which one of his two grievances he wished to pursue through the administrative remedy process. *See* Potter Affidavit, D. E. No. 17-9, p. 1, ¶ 3, referring to 12/22/11 Memorandum, D. E No. 17-6.

According to Potter, Odom did not comply with her instructions, but instead re-submitted the same two grievances, along with a letter dated December 27, 2011, asking her to re-consider her Memorandum which limited him to pursuing only one grievance.[2] [D. E. No. 17-9, p. 5, ¶ 3] Potter states that the two grievances which Odom re-submitted "...were not filed for the same reason set forth in the initial Memorandum [of December 22, 2011] ." [*Id.*] By Memorandum dated December 28, 2011, Potter notified Odom that she was returning his two grievances dated December 20, 2011, but that she would forward them to the appropriate staff for investigation. [D. E. No. 17-8, ¶ 9] Potter also informed Odom that she was in the process of filing a later and unrelated grievance which he had submitted on December 27, 2011. [*Id.*]

---

2

In his December 27, 2011, letter to Sarah Potter, Odom attempted to re-characterize his grievance complaining about the manner in which Sergeant Banks, Officer Hall, and Officer Helton extracted him from his cell as one alleging claims of sexual misconduct. *See* D. E. No. 17-1 (describing one of his grievances as one "regarding sexual excessive force cell extraction," discussing the "unacceptable deliberate targeting of my genitals," and stating, "For no male or female's genitalia should ever be targeted to inflict pain or ventilate frustrations.").

Based on Potter's affidavit, the five defendants contend that Odom failed to properly exhaust his administrative remedies by failing to select one of his two grievances to pursue concerning the alleged events of December 8, 2011. The defendants argue that after receiving Potter's Memorandum, Odom should have corrected and re-submitted a compliant grievance. [D. E. No. 17-1, p. 6]

The five defendants further assert that even ignoring Odom's refusal to correct and re-submit his grievance according to Potter's instructions, Odom's tendered grievance complaining of alleged excessive force was inadequate for another reason: it identified the alleged perpetrators as Sergeant Banks, Officer Hall and Officer Helton, but it did **not** identify Defendants Kevin Dennis, Richard Fleming, and Lieutenant "L." Wright as persons who allegedly used excessive force on him on December 8, 2011. [*Id.*, pp. 6-7] The defendants contend that Odom's excessive force grievance did not comply with CPP 14.6, which requires inmates to include "...all aspects of the issue and identify all individuals in the 'Brief Statement' of the problem so that all problems concerning the issue or individuals may be dealt with during step 1." [*Id.*, p, 7, quoting CPP 14.6 § II (J)(1)(a)(3), at D. E. No. 17-4, p. 8]

Odom responds that he did in fact fully exhaust his administrative remedies concerning both his claims alleging excessive force (as to Defendants Helton, Dennis,

8

Fleming, Banks, and Wright) and deliberate indifference (as to Defendant Bonnie Elam), and that Potter's refusal to accept two separate grievances concerning the alleged events of December 8, 2011, was unreasonable. [D. E. No. 24] Odom alleges that prior to submitting his two grievances on December 20, 2011, he asked EKCC Lieutenant Jimmy Hill if he could combine two issues--medical claims and claims challenging the actions of the EKCC extraction team-- in the same grievance; that Hill informed him that he could not do so because "'policy does not allow such,'" D. E. No. 24-1, pp. 2-3; and that Hill advised him to submit both grievances "'since they are on one incident.'" [*Id.*, p. 3] Odom essentially argues that because he relied on Hill's advice to submit two separate grievances about the alleged events of December 8, 2011, Potter should not have required him to pick one of his two grievances to pursue. [*Id.*, p. 4, ¶ 14]

Odom also responded that besides the two grievances he submitted on December 20, 2011, he submitted another grievance dated December 27, 2011, in which he alleged that EKCC official Shawn McKenzie had damaged his personal property. [D. E. No. 24-1, p. 4] Odom argued that Potter processed his "property damage," but that she unreasonably rejected his two more serious grievances concerning the events of December 8, 2011. [D. E. No. 24-10, p. 3]

Odom further alleged that as to his failure to identify Dennis, Fleming, and

9

Wright in one of his grievances, he properly referred to the "cell extraction team" in his grievance. Odom claims that because the cell extraction team members wore bio-hazardous body suits and masks, he was unable to ascertain the specific identities of all of the EKCC officials involved in the extraction effort in time to file his grievance. Odom argued that in light of these facts, he did everything possible to exhaust all claims which arose on December 8, 2011.

Finally, Odom argued that by refusing to process his grievances and forward them to the warden, the defendants violated the KDOC's grievance policy. [D.E. No. 24-10, pp. 9-10] Odom alleged that because his grievance alleged sexual misconduct on the part of the correctional officers who extracted him from his cell, EKCC Grievance Coordinator Sarah Potter should have forwarded that grievance concerning directly to the warden, pursuant to CPP 14.6 § II (J)(1)(b)(9).

In reply, the five defendants reiterated that Odom failed to exhaust his claims against them by failing to correct and re-submit one grievance; that Odom could not rely on the alleged verbal advice of another EKCC employee concerning process for submitting grievances in place of the written procedures; that nothing in Odom's grievance complaining about the manner in which the EKCC officials removed him from his cell would have notified Grievance Coordinator Potter that Odom was asserting a claim of "sexual" misconduct; that Odom failed to follow the written

10

procedures set forth in CPP 14.6, which required him to identify each individual involved in an alleged incident, and Odom's broad reference to the "cell extraction team" in his grievance was inadequate; and that Odom's failure to identify Dennis, Fleming, and Wright in his grievance alleging excessive force rendered that grievance fatally defective under CPP 14.6 (as to Dennis, Fleming, and Wright). [D. E. No. 26]

**Motion to Dismiss filed by Defendant Kevin Williams [D. E. No. 30]**

Williams has, by counsel, filed a separate motion to dismiss Odom's Eighth Amendment claims against him. Williams states that Odom alleged that on December 8, 2011, he (Williams) failed to respond to, intervene in, or stop other defendants from using excessive force against Odom. Like Defendants Helton, Dennis, Fleming, Banks, and Wright, Williams argues that Odom's claims against him should be dismissed because Odom failed to properly exhaust his administrative remedies in accordance with the CPP 14.6. Williams states, "While Plaintiff's grievance lists specific actions taken by various officers, there is no claim that Defendant Williams violated Plaintiff's rights and the grievance never mentions Defendant Williams at all. As such, Plaintiff fails to properly exhaust his claims against Defendant Williams. *See Peterson v. Cooper*, 463 Fed. Appx. 528 (6th Cir. 2012)." [D. E. No. 30, p. 3]

Further, like Defendants Helton, Dennis, Fleming, Banks, and Wright, Williams also argues that after Sarah Potter instructed Odom to correct and re-submit

a grievance which would comply with the conditions of his grievance restrictions, Odom failed to correct and re-submit a compliant grievance. [*Id*., pp. 3-4] Williams contends that although Odom began the KDOC's grievance process concerning his claims against Williams, he failed to *complete* it. [*Id*.]

In response to Williams' motion to dismiss, Odom adopted and reiterated the arguments he previously advanced on March 15, 2013, in response to the motion for summary judgment filed by Defendants Helton, Dennis, Fleming, Banks, and Wright. *See* D. E. No 32 (adopting prior arguments set forth in D. E. No. 24).

## Motion to Dismiss [D. E. No. 36] and Motion for an Order to Obtain Medical Records of Glenn D. Odom, II [D. E. No. 42] filed by Defendant Bonnie Elam

Elam has, by counsel, filed a separate motion to dismiss Odom's Eighth Amendment claims against her. Elam states that on December 8, 2011, Odom smeared feces and urine all over his cell; that the EKCC cell entry team was assembled and thereafter removed Odom from his cell, escorted him to the showers to be decontaminated, and returned Odom to his cell. Elam states that after Odom was returned to his cell, he came to the cell door and she checked his wrists as his hand cuffs were removed; that she noted no injuries during cuff removal; that she asked Odom to come back to the door so that she could check him one final time for injuries; and that Odom refused her request, but that she could see Odom through the

12

cell door and observed that he appeared to have no injuries.

Like Defendants Helton, Dennis, Fleming, Banks, and Wright, and Williams, Defendant Bonnie Elam argues that Odom's claims against her should be dismissed because Odom failed to properly exhaust his administrative remedies against her in accordance with the CPP 14.6. Elam contends that on December 20, 2011, Odom submitted two grievances in connection with the events of December 8, 2011, when he was permitted to submit only one (because of grievance restrictions imposed against Odom), and that after Sarah Potter instructed Odom to correct and re-submit a grievance which would comply with the conditions of his grievance restrictions, Odom failed to correct and re-submit a compliant grievance. [*Id.*, pp. 3-4] Elam contends that because Odom failed to cure the deficiencies with his non-compliant grievance(s) when he was given an opportunity to do so, "the grievance process stopped–but was not exhausted." [D. E. No. 36-1, p. 3]

In response, Odom contends that he did in fact fully exhaust his claims against Elam alleging medical deliberate indifference. Odom claims that Sarah Potter, the EKCC Grievance Coordinator, processed a later grievance he filed concerning damage to his personal property, but that she unreasonably instructed him to choose between two more serious grievances he submitted concerning the alleged events of December 8, 2011. [D. E. No. 39-4, p. 2, ¶¶ 4-10]

13

Because Odom alleged that Elam denied him necessary medical treatment in violation of his Eighth Amendment rights, Elam filed a notice through which she attempted to obtain Odom's medical records in accordance with the Health Information Portability and Accountability Act Privacy Regulations, 45 C.F.R. § 164.512(e). *See* Elam Notice [D. E. No. 37]. After Odom objected [D. E. Nos. 39 and 40], Elam filed a motion [D. E. No. 42] seeking an order with which she could obtain Odom's medical records. After Odom filed another objection [D. E. No. 44], Elam filed a notice renewing her prior motion for an order which would enable her to obtain Odom's medical records. *See* Supplemental Notice [D. E. No. 47].

## Motion to Compel (Production of a Prison Video recording) [D. E. No. 25] and Motion to Amend Complaint (to add an Additional Defendant) [D. E. No. 46] filed by Plaintiff Glenn D. Odom, II

Odom has filed a motion to compel the defendants to produce a prison video which he claims would have recorded the cell entry team entering and removing him from his cell on December 8, 2011. [D. E. No. 25] Defendants Helton, Dennis, Fleming, Banks, and Wright have objected, stating "While the recording might be applicable to the core issues raised in the Complaint, it is not applicable to the issue addressed in the Summary Judgment motion of whether Plaintiff properly exhausted his administrative remedies before filing his Complaint." [D. E. No. 27, p. 1, ¶ 5]

On June 17, 2013, almost one year after filing this § 1983 action, Odom filed

14

a motion to amend his complaint to include an additional defendant, "Ofc. Prater." [D. E. No. 45] Odom alleges, "Ofc. Prater worked the control panel on the night of this incident and must be added to fully understand plaintiff's claim." [*Id.*, p. 1, ¶ 1]

## DISCUSSION

The Court will grant the defendants' motion for summary judgment and motions to dismiss because they have established that although Odom began the administrative exhaustion process with respect to his excessive force and medical deliberate indifference claims, he did not complete the process after EKCC grievance Coordinator Sarah Potter noted the defects in his grievances and gave him an opportunity to correct them and re-submit a proper grievance.

Odom admits, and Sarah Potter's affidavit verifies, that on December 20, 2011, when Odom submitted his two separate grievances concerning the alleged events of December 8, 2011, he was subject to a "grievance restriction" under which he could file only one grievance every ten (10) days. The "grievance restriction" procedure under which Odom was placed was, and is, expressly authorized by CPP 14.6 § II (E)(3), *Repetitive Grievances*, which states:

> If the warden determines that an inmate or group of inmates has abused the grievance procedure by filing numerous frivolous or harassing grievances, the Warden may limit the number of grievances which may be filed by that inmate. **An inmate or group of inmates, whose grievances have been limited, shall be allowed to file no more than**

15

**one (1) grievance every ten (10) business days**. This limitation shall
be placed into effect for no more than six (6) months at a time....

*See* CPP § 14.6 § II (E)(3) (emphasis added) [D. E. No. 17-4, p. 3]

To the extent that Odom attempts to challenge the validity of this grievance

restriction—under the guise that it prevented him from filing two separate grievances

concerning the alleged events of December 8, 2011-his argument fails. Courts in this

circuit have consistently upheld procedures which modify or restrict the ability of

prisoners (who have been deemed abusive grievance filers) to file unfettered

grievances. *Hartsfield v. Mayer*, No. 95-1411, 76 F.3d 378 (table), 1996 WL 43541,

at *2 (6th Cir. Feb. 1, 1996) (unpublished order); *Brooks v. Yates*, No. 1:09-CV-922,

2012 WL 2115301, at **13-14 (S.D. Ohio March 30, 2012) (concluding that the

prisoner's ability to pursue his administrative remedies was not significantly impaired

by the temporary and limited-in-scope restrictions imposed based upon his prior

abuse and misuse of the grievance procedure). Contrary to Odom's suggestion,

prisoners have no constitutionally protected due process right to unfettered access to

prison grievance procedures. *Walker v. Michigan Dept. of Corrections*, No. 04–1347,

2005 WL 742743, at *2 (6th Cir. April 1, 2005). Prison officials may place

reasonable limits on a prisoner's access to the grievance process. [*Id.*]

Thus, Odom's rights were not violated by the fact that at the relevant time

16

(December 2011) the EKCC had imposed vaild restrictions in Odom's ability to file grievances, and Odom was required to comply with the "one (1) grievance every ten (10) business day" restriction set forth in CPP 14.6 (II)(E)(3). EKCC Grievance Coordinator Sarah Potter justifiably rejected the two December 20, 2011, grievances which Odom submitted concerning the alleged events of December 8, 2011, because the submission of two grievances violated the "one (1) grievance every ten (10) business day" restriction set forth in CPP 14.6 § II (E)(3).

Odom next contends that because he relied on verbal advice from another EKCC official, who allegedly instructed him to file two separate grievances concerning the alleged events of December 8, 2011, Potter should have processed both of his grievances and not required him to choose between his two grievances. Odom's argument on this issue lacks merit. The written provisions of CPP 14.6 controls the both content of and the procedures for submitting prisoner grievances, not the alleged verbal representations of prison officials. Here, Odom had been placed under a valid grievance restriction under which he was limited to filing one (not two) grievance every ten business days. Once the EKCC Grievance Coordinator specifically instructed Odom to submit one grievance, not two, and gave him an opportunity to cure the defects with his non-complaint submissions, Odom was required to correct his filings and submit one grievance, not two, which complied

17

with both the Grievance Coordinator's instructions and CPP 14.6 (II)(E)(3).

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. 199, 218–19 (2007). In *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), the Supreme Court held that the PLRA's exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009).

Odom did not comply with the KDOC's deadlines and other critical procedural rules. When the EKCC Grievance Coordinator expressly instructed Odom to correct his defects and submit **one** grievance, she was following "other critical procedural rules" which controlled Odom's grievance restriction status. Odom was not free to unilaterally interpret the KDOC's exhaustion procedures in some other inconsistent manner which he deemed to be more suitable, such as continuing to submit two grievances which arose out of the same set of nuclear facts. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1033 (10th Cir. 2002) (inmate failed to exhaust available remedies when he did not take advantage of opportunity to correct grievance that was rejected for procedural reason); *Jones v. Wilson*, No. 6:09-CV-235-GFVT, 2009 WL 3211512,

18

at *2-3 (E.D. Ky. Oct. 1, 2009) (prisoner did not properly appeal his disciplinary conviction where, during the administrative remedy process, he failed to cure the deficiency which the Bureau of Prisons noted in its rejection notice); *Tucker v. Sawyer*,No. 2:01CV408, 2001 WL 34780351 (E.D. Va. Aug. 6, 2001) (same).

By disregarding Potter's instructions (which were clear and unambiguous), failing to cure the noted deficiencies, and re-submitting the two previously-rejected separate grievances, Odom thereby abandoned the established KDOC grievance process and failed to exhaust any of his purported claims arising from the alleged events of December 8, 2011. "[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999). "The PLRA's exhaustion requirement is a strict one. This is not to be harsh on prisoners, but to further the important goals behind the law: to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected, and to create an administrative record for those disputes that eventually end up in court." *Napier v. Laurel County*, 636 F.3d 218, 220 (6th Cir.2011) (quoting *Reed–Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)).

Because Odom refused to comply with Potter's invitation to cure his defective

19

grievances, all of his claims asserted against the defendants remain unexhausted. *Harris v. Rios*, No. 7:08-CV-32-KKC, 2009 WL 1458205, at *4 (E.D. Ky. May 26, 2009) (prisoner did not exhaust where he failed to respond to Bureau of Prisons' request that he provide adequate evidence excusing his late filing of a grievance).

Further, Odom offers no legitimate reason for failing to include both his excessive force and medical care issues in one grievance on December 20, 2011, and certainly on December 27, 2013, five days *after* Potter had instructed him to correct his grievances and submit just one grievance. Odom's alleged reliance on verbal representations from someone who worked in the prison, who was *not* the prison's designated grievance coordinator, was simply unreasonable. Pursuant to CPP 14.6 § II(J)(1)(a)(3), *Inmate Grievance Process*, an inmate may only file separate grievances for "separate issues and unrelated incidents." [D. E. No. 17-4, p. 8 ¶ 3]

Further, after Potter informed Odom that he could not submit two grievances, but that he would be allowed to submit one grievance, nothing prevented Odom from submitting one consolidated grievance concerning *both* his excessive force and medical claims. In his complaint, Odom alleged that Elam "...did witness all of the officers' actions and eventually left (B-walk shower area) after she saw things getting unconstitutional," D. E. No. 1, p. 7, ¶ 24; that in response to his request for a physical examination, Elam stated, "Well, that's what happens when you play with s**t!," *id.,*

20

¶ 27, and that immediately after he was secure in his cell, he "...observed Nurse Elam sitting in the core area laughing with extraction team officers while completing paperwork," *id*., at ¶ 29.

Any reasonable reading of Odom's tendered and rejected grievances, his complaint, and numerous subsequent filings, demonstrate that the alleged use of excessive force by six of the defendants and the alleged denial of medical care by Elam, the seventh defendant, constituted "one issue" as specified in CPP 14.6 § II (J)(1)(a)(3). Given Odom's description of the events in his complaint and other filings, the alleged denial of medical treatment by Elam occurred in proximate conjunction with the other six defendants' alleged use of excessive force on him, and was not an "unrelated" incident.

Next, Defendants Dennis, Fleming, and Lieutenant Wright correctly argue that even ignoring Odom's failure to complete the KDOC grievance process, his tendered grievance complaining of alleged excessive force [D. E. No. 17-5, p. 1] was inadequate because it did not specifically identify them as the alleged perpetrators. As the defendants note, CPP 14.6 § II (J)(1)(a)(4) requires prisoners to include

> "all aspects of the issue and identify **all individuals** in the 'Brief Statement of the Problem' section of the written grievance so that all problems concerning the issue or individuals may be dealt with during step 1.

21

[D. E. No. 17-4, p. 8, ¶ 4] (emphasis added)

Odom stated that the cell extraction team removed him from the cell, which is merely a statement of fact which none of the parties dispute.  But as for specific allegations of tortious and/or unconstitutional conduct, Odom alleged in his grievance *only* that (1) Sergeant Banks sprayed him with OC; (2) Officer Hall slapped him on the head with his shield; and (3) Officer Helton rammed his (Odom's) head into the door, made several racially offensive verbal statements to and about him, instructed another officer to block the camera, and used his shield to injure his (Odom's) penis. [*Id.*].  Odom did *not*, however, allege that Defendants Dennis, Fleming, and Wright used excessive force against him, nor did he word his grievance in such a way which would have notified the EKCC Grievance Coordinator that other persons who were unknown to Odom *at that time* allegedly used excessive force on him.  Odom's excessive force grievance was limited *strictly* to claims alleging misconduct on the part of Officers Banks, Hall, and Helton.

Courts in this circuit have consistently upheld prison policies which require prisoners to identify, in his or her grievance, each individual alleged to be involved in the activity at issue. *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (by not naming prison doctor in his grievance relating to prison officials' failure to abide by a previously imposed medical housing restriction, as specified in the prison's

22

grievance procedures, prisoner failed to exhaust his administrative remedies against doctor, as required by PLRA, precluding his § 1983 claim against the prison doctor); *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009) (discussing a state prison policy directive which "explicitly required [the prisoner] to name each person against whom he grieved," and affirming the district court's dismissal of a prisoner's claim for failure to comply with that directive and properly exhaust his available administrative remedies); *King v. Banks*, No. 2:10-CV-852, 2012 WL 1068103, at *4 (S.D. Ohio Mar. 29, 2012) (finding that inmate had failed to exhaust his administrative remedies because his grievances did not "mention ... defendants specifically, nor [did they] give enough factual context [such] that [the] defendants would be on notice" of the plaintiff's claims); *Leonard v. Mohr*, No. 2:11-CV-152, 2012 WL 423771, at *5 (S.D. Ohio Feb. 9, 2012) (same); *Lacey v. Grandsen*,Civil Case No. 06-12454, 2008 WL 2513849, at *7 (E.D. Mich. June 19, 2008) (dismissing prisoner's claims because he failed to mention Defendant Gransden on the grievance form which he attempted to submit, and thereby "failed to satisfy the requirement that grievances indicate the '[d]ates, times, places and **names of all those involved** in the issue being grieved.'") (emphasis added). Thus, Odom failed to exhaust his purported excessive force claims against Defendants Dennis, Fleming, and Wright.

Finally, Odom claims that EKCC Grievance Coordinator Sarah Potter failed

to treat his grievance challenging the manner in which he was extracted from his cell

as one raising a claim of "staff sexual misconduct," and that her failure to forward

that particular grievance to the Warden (thus by-passing the informal resolution phase

of the KDOC grievance process) violated the KDOC's administrative regulations and

his federal constitutional rights. This claim lacks merit for two reasons.

First, Odom alleged claims of excessive force in that grievance, but he did not

allege facts which objectively qualify as "sexual misconduct." Odom stated,

> "Ofc. Hall started sawing (cutting) the shield into my genitals and my
> shoulder, my arm, and my genitals again causing bleeding and bruises.
> After minutes of me yelling for them to stop they continued to saw the
> edge of the shield into my private parts.
> . . . .
> This is well beyond excessive force. This is a clear cut case of two (2)
> perverted officers expressing frustration in a sick way."

[D. E. No. 17-5, pp. 1-2]

In the first sentence, Odom indicates that Officer Hall, acting alone, physically

assaulted several parts of his body, but he did not allege that Officer Hall engaged in

activity (such touching, groping or rape) that could be considered as "sexual

misconduct." Thus, Odom's statements amount to claims of excessive force by

Officer Hall, not sexual misconduct. Further, even if Odom's grievance could be

considered one alleging sexual misconduct, Odom alleged in the first sentence of his

grievance only that *Officer Hall*, acting alone, used his shield to injure Odom's penis.

24

Officer Hall is not, however, a defendant to this action.

In the second sentence of his grievance, Odom did state that "'*they*' continued to saw the edge of the shield into my private parts," *id.*, but Odom did not identify who "they" were. "They" could have referred to: (a) Officers Hall and Helton, (b) Officers Helton and Banks, (c) Officers Hall and Banks, (d) Officers Hall, Helton, and Banks, or (d) other EKCC officials who were not identified in the grievance. Because Odom failed to adequately identify the individuals allegedly involved in injuring his penis, the Court can not conclude that his grievance would have sufficiently notified EKCC officials that Odom was claiming that Defendants Dennis, Fleming, and Wright engaged in "sexual misconduct" against him.

Second, Odom claims that the "defendants" violated his constitutional rights by failing to forward his alleged "sexual misconduct/excessive force" grievance directly to the warden of EKCC. However, Odom does not allege that any of the named defendants were involved in, or responsible for, the handling of prisoner grievances. Sarah Potter, the EKCC Grievance Coordinator, made the decision to deny Odom's two grievances, but Potter is not a defendant to this action.

Even assuming Potter violated the KDOC regulations and procedures by (a) failing to interpret Odom's excessive force grievance as one alleging "sexual misconduct," and (b) failing to forward that grievance directly to the warden, Odom

25

has no claim because prisoners do no inherent constitutional right to an effective grievance procedure. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Overholt v. Unibase Data Entry, Inc.*, 221 F.3d 1335, 2000 WL 799760, at *3 (6th Cir. 2000) (Table).

Further, the failure of prison officials to follow internal regulations and/or policies is not a constitutional violation. *See Davis v. Berghuis*, No. 1:12-CV-258, 2012 WL 3116360, at *10 (W.D. Mich. July 31, 2012) ("Indeed, Plaintiff's claim of "misconduct" appears to rest on the fact that Defendants did not comply with prison regulations, but that fact is not sufficient to state a claim on its own."); *Haight v. Thompson*, No. 5:11CV–P118–R, 2011 WL 4473143, at *3 (W.D. Ky. September 26, 2011) ("A prison official's failure to follow internal rules and regulations does not alone state a constitutional violation....").[3] The mere violation of state prison policies and procedures is not a violation of the federal constitution. *Levin v. Childers*, 101 F.3d 44, 46 (6th Cir. 1996); *Harrill v. Blount County, TN.*, 55 F.3d 1123, 1125 (6th Cir. 1995) (state law cannot create a federal constitutional right).

Based on the foregoing, the Court concludes that Odom did not

---

[3]

*See also Bonner v. Federal Bureau of Prisons*, 196 F. App'x. 447, 448 (8th Cir. 2006); *Ortega v. Maynard*, 06-CV-084-HRW, 2006 WL 1877016, at *2 (E.D. Ky. July 06, 2006); *Antonelli v. Sanders*, No. 2:06CV00052SWW, 2006 WL 667964, at *3 (E.D. Ark. March 15, 2006) (BOP's failure to follow its internal policy was not a constitutional violation).

administratively exhaust his federal constitutional claims against the defendants. Having dismissed Odom's underlying federal claims, the Court declines to exercise jurisdiction over his pendent claims alleging a violation of his rights guaranteed under state law. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Taylor v. First of Am. Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992). Odom may assert his state law claims in state court, but the Court expresses no opinion as to whether such claims would be time-barred and/or meritorious.

Accordingly, the Court will grant (1) the motion for summary judgment filed by Defendants Gerald Helton, Kevin Dennis, Christopher Banks, Richard Fleming, and Lieutenant "L." Wright [D. E. No. 17]; (2) the motion to dismiss filed by Defendant Kevin Williams [D. E. No. 30], and (3) the motion to dismiss filed by Defendant Bonnie Elam [D. E. No. 36].

### ODOM'S MOTION TO AMEND COMPLAINT TO ADD NEW DEFENDANT [D. E. No. 45]

Odom asks to amend his complaint to assert claims against a new defendant, "Ofc. Prater," who Odom identifies as the person who "worked the control panel on the night of this incident." [D. E. No. 45, p. 1] Odom's motion will be denied.

The Eighth Amendment claims which Odom asserts in his complaint arose on December 8, 2011. Kentucky's one-year statute of limitations, Ky. Rev. Stat. Ann §

27

413. 140(a) governs personal injury actions, which includes claims asserted under §

1983. Thus, Odom was required to assert any claims arising from the events of

December 8, 2011, on or before December 8, **2012**. Odom clearly asserted his § 1983

claims against the seven name defendants within the requisite one-year period, but

his June 17, 2013, motion to add a new defendant, "Ofc. Prater," falls outside of that

one-year limitations period.

Odom will not be allowed to add a new defendant to this proceeding because

although Federal Rule of Civil Procedure 15(c)(1)(B) allows relation back of an

amendment asserting a "claim or defense," it does not authorize the relation back of

an amendment adding a new party. *Asher v. Unarco Material Handling, Inc.*, 596

F.3d 313, 318 (6th Cir. 2010). "[T]he precedent of this circuit clearly holds that 'an

amendment to a pleading which adds a new party creates a new cause of action and

there is no relation back to the original filing for purposes of limitations." *In re Kent*

*Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir.1991) (quoting

*Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (6th Cir. 1973)); *see also United States*

*ex rel. Statham Instruments, Inc. v. Western Cas. & Surety Co.*, 359 F.2d 521, 523

(6th Cir. 1966) (stating that, when "[t]he effect of Plaintiff's amendment is to add

another party[,]" it "establishes a new and independent cause of action which cannot

be maintained when the statute has run, for the amendment is one of substance rather

28

than one of form and brings into being one not presently in court."); *Smart v. Ellis Trucking Co., Inc.*, 580 F.2d 215, 218 (6th Cir. 1978).

### Two Remaining Motions

Because the Court will grant the defendants' motion for summary judgment/motions to dismiss, based on Odom's failure to exhaust his claims, the two remaining motions, Defendant Elam's "Motion for Order (to obtain the plaintiff's medical records) [D. E. No. 42], and Odom's "Motion to Compel (the production of a prison video recording)" [D. E. No. 25] will be denied as moot.

### CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1)    The "Motion for Summary Judgment" filed by Defendants Gerald Helton, Kevin Dennis, Richard Fleming, Christopher Banks, and Lieutenant L. Wright [D. E. No. 17; supplemented at D. E. No. 48] is **GRANTED**;

(2)    the "Motion to Compel (the production of a prison video recording)" filed by *pro se* plaintiff Glenn D. Odom, II [D. E. No. 25] is **DENIED as MOOT**;

(3)    the "Motion to Dismiss" filed by Defendant Kevin Williams [D. E. No. 25] is **GRANTED**;

(4)    the "Motion to Dismiss" filed Defendant Bonnie Elam [D. E. No. 36] is **GRANTED**;

(5)    the "Motion for Order (to obtain the plaintiff's medical records)" filed by Defendant Bonnie Elam [D. E. No. 42] is **DENIED as MOOT**;

(6)    the "Motion to Amend/Correct the Complaint" filed by Plaintiff Glenn D. Odom, II [D. E. No. 45] is **DENIED**;

(7)    Odom's complaint [D. E. No. 1] is **DISMISSED**; and

(8)    The Court will enter a judgment contemporaneously with this Memorandum Opinion and Order.

This $\underline{6^{th}}$ day of August, 2013.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge